Topolewski v. Plankinton Packing Co. 143 Wis. 52.

---

TOPOLEWSKI, Respondent, vs. PLANKINTON PACKING COM-
PANY, Appellant.

*April 7—May 24, 1910.*

(1–4, 13) *Malicious prosecution: Probable cause: Advice of attorney:
"Full and fair statement of all the facts:" Conviction: Reversal:
Fraud.* (5–8) *Corporations: Torts of agents: Ratification: Who
are agents.* (9–11) *Punitory damages: When allowed: Court
and jury: Liability of corporation.* (12–14) *Presumptions:
Knowledge of the law.*

1. If one before instituting a criminal prosecution states to a duly
licensed attorney at law, fully and fairly, all the facts and cir-
cumstances within his knowledge or of which he has reasonably
reliable information, and acts upon the advice of such attorney
respecting whether such facts render the defendant guilty of a
criminal offense, he has, in the legal sense, probable cause for
his action rendering him immune from liability for malicious
prosecution.
2. The foregoing rule applies liberally to informers, in that the at-
torney consulted need not necessarily be the public prosecutor,
and the term "full and fair statement of all the facts" does not
call for all facts reasonably discoverable, or require the in-
former to make diligent inquiry in respect thereto.
3. In case of a criminal prosecution being commenced upon the
initiative of a private person, and the action being prosecuted

to conviction and judgment, without collateral fraud, such judgment will stand as probable cause for such commencement, rendering such person immune from liability for malicious prosecution, though the judgment be reversed on appeal for error committed upon the trial; even error in holding that the facts claimed by such person to exist constituted guilt of the criminal charge.

4. The fraud which will take a judgment of conviction out of the rule stated, is fraud extrinsic, not in respect to matters litigated and passed upon in the trial of the action.

5. If the agent of a corporation, acting within the scope of his duties, even though abusing his authority in that he uses methods not expressly or impliedly authorized, or which could reasonably have been anticipated, commits a remediable wrong to another, causing that other recoverable damages, the corporation as well as the agent is liable.

6. In case of the agent of a corporation, assuming to act in its behalf, committing a remediable wrong to another by some act outside the scope of his authority, if the corporation, with knowledge of the facts, ratifies his conduct, it is liable the same as if such act was done by its authority.

7. In case a person to whom the general management of a corporation is intrusted by corporate action, or one who is permitted to exercise such authority, employs another to perform some service for the corporation, such employment makes such other a corporate agent as to all acts done by him within the scope of his duties, and in case he acts outside such duties, its agent so far as such acts are subsequently ratified.

8. Ratification by a corporation of the acts of a person falsely assuming to have authority in the premises, may be established, circumstantially, as by conduct of those intrusted with the governing authority or general management of the corporate affairs clearly showing approval.

9. Punitory damages are not allowable as matter of right, nor are such damages allowable, at all, unless the wrongdoer in perpetrating the wrongful act is actuated by bad intent to injure, either actual or with such reckless disregard of consequences as to be equivalent thereto.

10. It is for the court, in an action for damages sounding in tort, to determine whether, in any reasonable view of the evidence, punitory damages would be proper, and if so, to leave it to the jury to allow such damages or not, in their discretion, informing them, adequately, that such an allowance is not to be made out of any regard for the plaintiff but solely as a punishment of the defendant and a warning to others, and is to be measured out as to amount solely in that view.

11. Punitory damages are not allowable, generally, against a corporation for the malicious act of its agent within the scope of his authority or otherwise; its liability is limited, in any case, to actual damages, in the absence of authority to commit the wrong with its malicious characteristic, or subsequent ratification of its commission with knowledge of the facts.

12. The maxim, "Every one is presumed to know the law," does not obtain literally and generally; it is limited by the reason for the rule, viz.: to prevent violators of the criminal code from escaping punishment on the ground of ignorance of the law and violators of private rights, escaping liability for actual loss thereby inflicted on such ground.

13. If a person acts, in commencing a criminal prosecution, upon the advice of one duly licensed to practice the profession of law, and such advice proves to be wrong, he cannot be rightly held to have acted in bad faith because of a legal presumption that every one knows the law.

14. The maxim, "Every one is presumed to know the law," does not prevail against the real truth as to any particular situation, except as regards punishment for a criminal offense, or responsibility for actual damages for violation of private rights.

   [Syllabus by MARSHALL, J.]


APPEAL from a judgment of the circuit court for Milwaukee county: ORREN T. WILLIAMS, Circuit Judge. *Reversed.*

Action to recover compensation for false imprisonment and malicious prosecution.

For the first cause of action it was alleged that defendant, a corporation, falsely and maliciously claiming that plaintiff was guilty of having committed the crime of larceny of its goods, to wit: three barrels of meat and leaf lard of the value of $55.26, caused him, without legal proceedings, to be restrained of his liberty for the period of one hour and then to be delivered to the public authorities and to be restrained of his liberty in the police station at Milwaukee for the period of two hours.

For a second cause of action it was alleged that defendant, maliciously and without probable cause, in due form of law, caused plaintiff to be arrested and prosecuted for the crime of larceny of its goods, as stated in the first cause of action; that

he was found guilty as charged; that upon a review of the conviction on writ of error it was held that the facts established in the action did not constitute a criminal offense and the conviction was, therefore, reversed and cause remanded for a new trial; and that, subsequently, such proceedings were, duly had in the trial court that the cause was again heard, resulting in its being decided that the facts claimed to exist, of which proof was made and considered, did not show plaintiff to be guilty of any criminal offense and he was, therefore, upon motion discharged.

Damages were claimed to have been sustained by plaintiff to the extent of $50,350.

Defendant, for an answer to the first cause of action, admitted that, at the time and place alleged, plaintiff was restrained of his liberty on a charge of larceny, and was, while so restrained, placed in custody of the chief of police of the city of Milwaukee and that he, subsequently, obtained his release on bail; and put in issue allegations as to aggravated character of the restraint.

Defendant, for an answer to the second cause of action, admitted (1) its alleged corporate character; (2) the claim that plaintiff, previous to his detention, was a retail meat dealer in the city of Milwaukee and accustomed to purchase stock of defendant; (3) that one Layer, at the time of such detention, was in its employ; (4) that plaintiff was prosecuted for larceny and convicted; that the conviction was reversed and on a retrial he was discharged, as alleged, but denied that the prosecution was maliciously commenced or carried on, or that the same was without probable cause, or, in any event, that he was damaged as claimed.

The evidence tended to prove, or was to this effect: On and prior to October 14, 1905, one Moody was defendant's secretary, one Booth its general manager, and said Layer manager of its wholesale department with one White as an assistant, and that one Dolan was one of its employees up to

a few days before such date.   Prior to the particular date a suspicious shortage was discovered in Layer's department. Circumstances came to his knowledge arousing suspicion that plaintiff, in his dealings with defendant, by the aid of dishonest employees, was the cause of the difficulty.   Layer was informed by Dolan and another employee that plaintiff had endeavored to conspire with them to defraud defendant. The general manager's son informed Layer of having overheard a conversation between plaintiff and Dolan in regard to stealing meat from defendant.   The conversation was, by consent of the secretary, brought about by Dolan in the hearing of Booth for the purpose of discovering whether the suspicions as to plaintiff were correct, and if so, to lay a plan whereby he might take meat, intending to steal the same, and under such circumstances as to be detected in the act. The younger Booth's presence within hearing was unknown to the accused.   The conversation confirmed the existing suspicion.   Thereafter Layer consulted with one of the city detectives and later it was arranged with Dolan to trap the plaintiff into stealing meat, if he were disposed to do so. Dolan ceased to be an employee of defendant some two weeks prior thereto.   He was indebted to plaintiff, who requested him to pay the indebtedness by aiding plaintiff to get meat from defendant without either party paying therefor.   The two agreed that Dolan should cause four barrels of meat to be placed on a loading platform in the morning in the customary place for customers to receive goods.   Layer and Booth, unknown to plaintiff, were behind Dolan in the scheme.   Plaintiff, by connivance of the three, was deceived into the belief that Dolan was still at work for the defendant. Dolan promised to be at the platform the next morning and by connivance with Booth and Layer kept his promise and was, apparently, on duty as an employee.   The four barrels of meat were placed on the platform convenient for plaintiff to consummate the scheme arranged between him and Dolan

and the latter was at his post as agreed with Booth and Layer. In due time plaintiff arrived with a conveyance to enable him to remove the meat.   He loaded three barrels into his wagon, one of defendant's employees assisting, and drove off. The universal custom in defendant's business, which was well known to plaintiff, was for customers to visit the office, give orders and receive tickets for the meat desired before its being placed on the platform, the ticket to be thereafter turned in showing delivery.   The manner in which the meat was taken in this instance was entirely out of the ordinary. Layer had a man on the watch when plaintiff took the meat, who followed him and induced him to return to the office. There he was met by a detective whom Layer had procured to be present.   The detective, without warrant, as desired by Layer, took plaintiff in charge and the two rode to the police station.   Layer, without delay, visited the district attorney's office and related to him the story of why plaintiff had been suspected of swindling defendant, and of the plan laid for detecting him and the result.   Particularly, he informed such attorney that before laying the plan a city detective was consulted, and further informed the attorney of the details of such plan and how it worked out, and was advised that the facts rendered plaintiff guilty of the crime of larceny.   Thereupon, under the district attorney's advice, Layer went to a designated assistant's office and, as directed, swore out the warrant for the arrest.   Thereafter he acted only as a witness when called upon.

On the trial of the criminal charge the facts, as stated, were brought out.   Plaintiff testified in his own behalf that he had no purpose to steal the meat but ordered it through Dolan, whom he supposed to be an employee of defendant. Dolan was not called to testify in the criminal prosecution though through no fault of defendant.   The result was that plaintiff was found guilty upon the theory that his story that he purchased, or supposed he purchased, the meat of defend-

ant through its sales agent Dolan, was false. The conviction was, in due course, reversed upon the ground that placing of the meat on the loading platform for the purpose of having plaintiff take it if criminally disposed, and the presence and apparent consent of defendant's employees to the taking, rendered the transaction barren of the element of trespass essential to larceny. Upon the second trial, which occurred on the same testimony as before, following the decision of this court, the action was dismissed. Plaintiff told the same story on the trial of this case as in the criminal case. He claimed, as before, that he bought the meat through Dolan, whom he supposed was defendant's agent; that when he drove to the platform for the meat Dolan was there ostensibly as an employee in authority; that he asked an employee, Klotz, which was his meat, and, upon the four barrels being accordingly pointed out, he took three of them, telling such employee, who was the loading boss, to send up the other barrel with the bill. Klotz testified somewhat differently than plaintiff. He testified that plaintiff asked him, at first, if the four barrels were his and later claimed them, and thereupon he, Klotz, loaded, or helped plaintiff to load, three of them on his wagon, and that thereupon the latter gave directions and drove off, as he testified, and that thereafter the witness placed plaintiff's name on the fourth barrel.

The claim was made on the criminal trial, as on the trial in this case, based on substantially the same evidence in the last instance as in the first, that the shortage in defendant's sales department was attributable to defendant's employees, and that such employees, in order to cover their own dishonest conduct, laid and executed a plan to induce plaintiff to take the meat from its loading platform, believing that he was rightfully doing so as purchaser of the goods, yet under such circumstances as to indicate a criminal purpose. The court, in the first trial, found the issue of fact in that and all other respects against the accused. No one of such find-

ings has been, in reality, disturbed. As before indicated, the conviction was reversed upon the theory that the findings of fact were warranted by the evidence, but that such facts did not constitute the crime of larceny.

In addition to the proofs received as before indicated, there was evidence on the subject of damages. The court submitted the cause to the jury resulting in a finding in favor of plaintiff, as follows: (1) Plaintiff did not co-operate with defendant's agents to obtain the meat without paying therefor. (2) Defendant did not, through its agent, cause the arrest of plaintiff honestly believing he had stolen the meat. (3) Defendant did not, by its agent, act in good faith and without malice in causing him to be restrained of his liberty and taken to the police station. (4) Plaintiff was damaged by the false arrest and imprisonment to the extent of $5,500, and in case he is entitled to recover should also have $675 as punitory damages. (5) Defendant did not, before the complaint was sworn to, by its agent, fully and fairly state to the district attorney all the material facts of which he had knowledge or information bearing on the supposed larceny. (6) Defendant did not, by its agent, believe the statements made to the district attorney to be true. (7) Defendant did not, by its agent, in instituting the prosecution, act in good faith. (8) Defendant did not, by its agent, when the prosecution was commenced, have probable cause to believe the plaintiff was guilty as charged. (9) In instituting the prosecution, defendant acted maliciously. (10) If the plaintiff recovers on the cause of action for malicious prosecution he should have $8,000 as compensatory damages and $825 as punitory damages.

The court required plaintiff, as a condition of a motion for a new trial being denied, to consent to take $1,000 as compensatory damages for the false imprisonment. The condition was complied with and thereupon, on motion, judgment was rendered in plaintiff's favor for $10,500 damages and

$176.44 costs, exceptions being saved to raise the questions discussed in the opinion.

For the appellant there was a brief by *Quarles, Spence & Quarles,* attorneys, and *Wm. Quarles,* of counsel, and oral argument by *Wm. Quarles.*

For the respondent there was a brief by *Lenicheck, Fairchild & Boesel,* and oral argument by *E. T. Fairchild* and *F. T. Boesel.*

MARSHALL, J.    Though there is some controversy between counsel in respect to the matter, and the trial court seems to have thought the evidence warranted such controversy, it is a grave question, on the record, as to whether the evidence does not conclusively show, independently of the result of the criminal action, that appellant's agent, in commencing it, acted in good faith upon the advice of the public prosecutor of Milwaukee county after having fully and fairly stated to him all the facts of which such agent had knowledge or information bearing on the subject.    If such be the fact, then the element of probable cause for the prosecution existed, the verdict of the jury was wrong in respect thereto, and the cause of action for malicious prosecution should have been dismissed.

The law is too well settled to be open to discussion, that the action of malicious prosecution will not lie against one who, before acting against the other party, fully and fairly submitted all the facts and circumstances within his knowledge, or of which he had reasonably reliable information, to an attorney at law, particularly in case of its being the public prosecutor, and proceeded in good faith upon his advice that such facts constitute guilt of the offense charged.    *Small v. McGovern,* 117 Wis. 608, 94 N. W. 651.

But, conceding that, as an original matter, the question of whether appellant's agent satisfied the foregoing rule to have been sufficiently involved, on the evidence, to require sub-

mission of it to the jury, was it a jury matter in view of the
fact that the evidence conclusively showed that the agent sub-
mitted all the facts within his knowledge and of which he
had reasonably reliable information, in respect to which evi-
dence was produced on the first trial of the criminal action,
and that the case, on the evidence, as to plaintiff's guilt, was
the same on such first trial as on the second and upon the
trial of this action, and that by the decision at first as to the
facts, supposed by the public prosecutor to probably exist,
relying on appellant's agent for information in the matter,
were found to exist, which decision has never been, in reality,
set aside, except for insufficiency in law to constitute guilt—
that the public prosecutor, upon whom such agent had a right
to and did rely, and the trial court, till guided by the de-
cision of this court, believed such facts constituted a criminal
offense, as charged, and acted accordingly?

The court, in the criminal prosecution, having found the
facts, as claimed by appellant's agent, to exist, contrary to
the claim of respondent then made and made again on the
second criminal trial and again on the trial of this action,
from which finding the respondent could not, as clearly
shown by the review in this court (*Topolewski v. State,* 130
Wis. 244, 109 N. W. 1037), have escaped punishment for
being guilty of the crime of larceny, had not the opinion of
the public prosecutor and the trial court, as to the legal ef-
fect of facts, been overruled—can it yet be said that appel-
lant, through its agent, did not have probable cause for in-
stituting the criminal prosecution?

Should appellant be mulcted in damages, and punished
punitively as well, for not knowing the law better than a
state officer, charged with the duty of prosecuting the case,
and the court, charged with the duty of originally applying
the law to the facts?

Is it true that, though a person, acting upon the advice of a
public prosecutor as to the legal effect of the facts, takes the

initiative in a criminal prosecution, and conviction follows, nevertheless, whether he is in danger of being charged as a malicious prosecutor, is contingent upon whether his adviser and the court mistook the law?

The highly unreasonableness of affirmative answers to the foregoing suggests that the truth of the matter must be in the negative. The mere statement of the propositions would seem to be sufficient to indicate correctly what the law is, assuming, as we may, that it is fairly what it ought to be, viz.: that a judgment in a criminal prosecution obtained without collateral fraud, though subsequently reversed, is conclusive evidence of probable cause for the prosecution.

The logic of the foregoing seems unanswerable, though it is true, as claimed by counsel for respondent, there is much conflict in judicial authorities in respect to the matter; some holding that the result of a conviction in a criminal prosecution, in the absence of collateral fraud, though reversed on appeal, is conclusive evidence of probable cause for instituting it; some holding that it is so conclusive unless obtained by fraud or perjury in the action, and some holding that, in any event, it is only *prima facie* evidence of probable cause. This court has never had occasion to speak on the subject. However, it has upheld the rule that advice of counsel, upon a reasonably fair statement of the facts under all the circumstances, constitutes probable cause, most liberally in favor of defendants in malicious prosecutions, holding that even advice of private counsel satisfies the rule, also that "full and fair statement of all the facts" does not require statement of all the facts discoverable, or that the informer should even make diligent inquiry to ascertain the facts. *King v. Apple River P. Co.* 131 Wis. 575, 111 N. W. 668.

The reason for the foregoing rests in sound public policy as well as fairness to litigants. The idea is that the administration of the criminal law should not be embarrassed by such

dangers to informers as will efficiently deter them from making known to professional legal advisers such information as they may have respecting probability of crime having been committed and the guilty parties; that so long as they act honestly they should have complete immunity from consequences. Such is the trend of even the written law as evidenced by numerous enactments rendering offenders immune from prosecution, criminally, who have been examined under oath in search of information upon which to institute prosecutions. Logically, it would seem, the unwritten law of this state should be that a conviction in a criminal prosecution, though reversed on appeal for any reason, is conclusive evidence of probable cause, rendering the person who instituted the proceedings immune from being successfully charged as a malicious prosecutor. In case a court has before it evidence, which, in its judgment, renders the accused guilty of the offense charged against him, it would look like a travesty on justice to hold that a person who instituted the prosecution, acting under professional advice based on the same appearances, did not have reasonable ground to believe the man guilty.

It would take much time and space to cite and discuss the conflicting adjudications on the subject before us. As an original proposition, in our judgment, the logic of the unwritten law of this state leads to the conclusion that a conviction in a criminal prosecution should stand as probable cause for its commencement, as regards the person who instituted it, and irrespective of any disturbance of the judgment on appeal. But, if such were not the case, this court would be inclined to reach the same result in choosing between the three conflicting lines of authority, because of its uniform custom, in case of such conflicts, there being no great preponderance in numbers and logic in favor of a particular doctrine, to follow that of the federal supreme court. That

court reviewed the conflict in question in *Crescent City L. S. Co. v. Butchers' Union S. H. Co.* 120 U. S. 141, 159, 7 Sup. Ct. 472, 481, and declared the true rule to be that:

"The judgment or decree of a court having jurisdiction of the parties and of the subject matter, in favor of the plaintiff, is sufficient evidence of probable cause for its institution, although subsequently reversed by an appellate tribunal. . . ." That rule "was not established out of any special regard to the person of the party. . . . It will avail him as a complete defense in an action for malicious prosecution, although it may appear that he brought his suit maliciously for the mere purpose of vexing, harassing, and injuring his adversary. The rule is founded on deeper grounds of public policy in vindication of the dignity and authority of judicial tribunals constituted for the purpose of administering justice according to law, and in order that their judgments and decrees may be invested with that force and sanctity which shall be a shield and protection to all parties and persons in privity with them." It "has respect to the court and to its judgment, and not to the parties, and no misconduct or demerit on their part, except fraud in procuring the judgment itself, can be permitted to detract from its force." "Neither misconduct nor demerit can be imputed to the court itself. The record of its proceedings imports verity; its judgment cannot be impugned except by direct process from superior authority. The integrity and value of the judicial system, as an institution for the administration of public and private justice, rests largely upon this wholesome principle."

There is no mistaking the meaning of that emphatic language. It was used after reviewing many cases bearing on the subject, some of which limited the rule as to immunity by judgment, to judgment "not obtained by undue means." It discarded the exception permitting raising a jury question as to whether a judgment was obtained by undue means notwithstanding its being between the parties free from collateral attack, except for extrinsic or collateral matters.

Our conclusion is that a judgment not procured by fraud

against a defendant in a criminal prosecution, though reversed for error, is conclusive proof of probable cause for commencing the prosecution, and that the effect of such judgment in that regard cannot be impaired by trying over again in an action for malicious prosecution, issues of fact raised, or proper to have been raised, and litigated on the former trial; that the term "fraud" in procuring the judgment, used by the federal supreme court, in the expression "no misconduct or demerit" of the parties, "except in procuring the judgment itself, can be permitted to detract from its force," refers to fraud extrinsic and collateral, not as to a matter involved and litigated and decided in the action, as for instance, in this case, whether the story of respondent or that of Dolan and others, where there was a conflict, is true.

It follows that the case, as to the second cause of action, should have been taken from the jury. The situation created by the judgment in the criminal action, as regards immunity to appellant from being successfully charged with want of probable cause for instituting the prosecution, was in no wise changed by the reversal for error. There was no proof of facts extrinsic impairing that situation. There was only proof to submit, as in the criminal case, the question of whether respondent's story of how he came to take the meat was true, which story the court in such case, in effect, found to be untrue and which finding, with others, as we have seen, has not been, in reality, disturbed, but found insufficient in law to constitute guilt.

It is conceded that there was a false imprisonment of respondent for a brief period; from the time he was taken charge of by direction of defendant's manager, Layer, till he was arrested on the warrant. The exact length of time does not appear from the evidence, but it sufficiently appears to have been less than one hour and not to have been characterized by any act of an aggravating nature. He was merely, without protest, taken in charge by a city detective at the

direction of appellant's manager, immediately escorted to the police station, which was a short distance away, he driving his own horse, apparently as ordinarily, and then, without much delay, placed under arrest on a proper warrant. For whatever damages he suffered, under all the circumstances, by reason of this brief illegal restraint, it must be conceded appellant is liable, if it is chargeable with the misconduct of Layer; otherwise not.

It must be conceded that, if the agents of appellant acted within the scope of their employment in committing the wrongful act, then it is liable, notwithstanding they may have used means within such scope which appellant did not authorize and had no reasonable ground to expect would be resorted to. The law on the subject has been stated by this court with sufficient definiteness to render more than merely restating it, as a rule, unnecessary:

"The master is liable for the negligent or wrongful acts of his servant committed in endeavoring to perform a duty delegated to him by the master, and this is so notwithstanding the method adopted by the servant may not have been authorized, and may even have been prohibited, by the master." "The test is whether the act was done in the prosecution of the master's business." *Cobb v. Simon,* 119 Wis. 597, 97 N. W. 276.

"A master is liable for the tortious act of the servant done in the scope of his employment, though the master did not authorize it, or even though he forbade it." *Johnston v. C., St. P., M. & O. R. Co.* 130 Wis. 492, 498, 110 N. W. 424, 426.

While it cannot be held, ordinarily, that a corporation or an individual in conferring power to act within a particular scope, intended to confer authority to abuse such power, or had reasonable ground to expect that it would be abused, such corporation or individual is, nevertheless, responsible for such abuse and, also, whether it occurs within the scope of the duty or not, if with full knowledge of the facts the conduct is

ratified. That is the effect of *Pfister v. Milwaukee Free Press Co.* 139 Wis. 627, 121 N. W. 938.

The law governing the subject having thus been clearly declared by this court, we forego referring to authorities elsewhere which have been numerously cited to our attention.

It seems that the facts of this case fall fairly within the doctrine stated. The whole conduct of appellant's affairs seems to have been left to Moody, the secretary, and Booth, the general manager, with Layer as manager of the wholesale department. There was no president and, for aught appearing, no vice-president. That Booth and Moody had authority, under the circumstances indicated, incident to their trusts, to protect the corporate business from unlawful depredations, and that prosecution of depredators, such as it was supposed respondent to be, was a legitimate means to that end, and within the scope of their employment in that regard, seem plain. Such being the case, it is considered that whatever Layer, the sales manager, did to protect the business, by precedent direction of those in charge thereof and within the scope of such direction, and whether the means employed were or were not legitimate, and whether he acted by precedent direction or not, if his conduct was afterwards ratified by the corporation by approval of those in general charge of its affairs—the corporation did, as regards, at least, compensable injuries to them.

The evidence is clear that the general manager impressed strongly upon the sub-manager, Layer, the necessity of apprehending those who were guilty of defrauding the company and that whatever he subsequently did was pursuant thereto. His act in causing the irregular illegal restraint of respondent was, at the best for appellant represented by its general manager, Booth, an abuse of power in the execution of a trust. But it satisfactorily appears that, after Layer's conduct came to the knowledge of Booth and all in authority, they not only did not disaffirm it, but ratified it. The con-

duct of all representing appellant, from first to last, shows that the act of Layer had all the corporate approval it could have had other than by precedent authorization or subsequent ratification by the board of directors, and no such formal authorization or ratification was necessary to make his act in legal effect the corporate act. Circumstantial ratification, conduct by those intrusted·with the whole power of the corporation clearly indicating approval of the wrongful act of the agent in performing his duties, is a sufficient ratification. That is the effect of *Pfister v. Milwaukee Free Press Co.,* *supra,* following *Bass v. C. & N. W. R. Co.* 42 Wis. 654, and *Patry v. C., St. P., M. & O. R. Co.* 77 Wis. 218, 46 N. W. 56.

So it is considered that the court did not commit error in refusing to take the claim for false imprisonment from the jury upon the ground that appellant was not responsible for the conduct of Layer.

Error is assigned because the court instructed the jury, in respect to the cause of action for false imprisonment, that they could allow compensation for loss of business, though no claim was made on that score in the complaint, and there was no showing of loss of business up to the time of the arrest on the warrant, and no direction was given to the jury to guard against danger of their duplicating damages for loss of business in assessing damages in the two causes of action.

Error is also assigned, in that the court submitted the cause of action for false imprisonment for an assessment of damages to cover expense of defending in the criminal proceeding, in connection with the arrest, notwithstanding there was no claim in the complaint for such recovery, and no evidence of expense except subsequent to arrest on the criminal warrant, thus again leading to duplication of damages by allowing a recovery for expenses where none were claimed, or shown, and also for expenses where there was no basis therefor if respondent was entitled to recover at all.

Error is further assigned, in that the court submitted the

false imprisonment cause of action for an assessment of damages for anxiety of mind caused by the pending criminal charge, instead of caused by the false and illegal restraint, the latter only being applicable to the claim for false imprisonment, and the former to the claim for malicious prosecution.

Further error is assigned, in that the court by the charge permitted an allowance of damages under the false imprisonment charge for the whole period of detention, whereas nearly all of such period was after the arrest on the warrant, and again in that it permitted an allowance of damages under the claim for false imprisonment in several other particulars which were either applicable only to the claim for malicious prosecution, or were not limited by the instructions so as to guard against compensation being allowed for the same thing twice.

Thus we have stated a number of claimed infirmities in the court's instruction, which are of the same general character and need not be discussed in detail. In general, the assignments of error mentioned are all well taken. Evidently there was want of clear appreciation of the elements of damages which were proper only on the claim for false imprisonment, and those which were proper only on the claim for malicious prosecution, and the necessity for so presenting the case to the jury to prevent duplicating; which was very liable to occur under the circumstances, and which evidently did occur. That is shown by the fact that, notwithstanding respondent was under false restraint but an hour at most, and without any circumstances of aggravation, he was awarded compensatory damages to the extent of $5,500, which the court was constrained to believe was too much by at least $4,500. The legitimate damages for the false detention of, probably, only part of an hour, merely time enough for Layer to consult with the public prosecutor and papers for the arrest to be obtained and served, were within a very nar-

row compass. Evidently the case was so submitted to the jury as to lead them to allow damages on the claim for false imprisonment which fell within the field covered by the claim for malicious prosecution, and then to allow the same over again.

The court committed further plain error by instructing the jury that if they concluded the conduct of defendant, by its agent, to have been malicious, they were not only permitted, but it was their duty, to award punitory as well as compensatory damages to respondent. Punitory damages are never allowable, in such a case, as matter of right. Regret has been expressed here that the law allowing such damages, at all, was incorporated into our jurisprudence. *Bass v. C. & N. W. R. Co.* 42 Wis. 654. There are indications that the court has been, at times, so disposed that, could the matter have been dealt with from an original standpoint, damages in civil actions would now be confined to those of a compensatory nature. *Eviston v. Cramer,* 57 Wis. 570, 15 N. W. 760; *Templeton v. Graves,* 59 Wis. 95, 17 N. W. 672. But the court has uniformly held that punitory damages are not allowable at all without the element of malice, and then not as a matter of right or out of any consideration for the plaintiff, but as a disciplinary punishment of the defendant, and admonishment to others to abstain from like bad conduct. A case should not be submitted for an award of such damages, at all, in the absence of evidence warranting a conclusion to a reasonable certainty that the defendant acted with bad intent of some sort (*Reed v. Keith,* 99 Wis. 672, 75 N. W. 392), and then only for the jury to allow or not allow such damages in their sound discretion in view of all the circumstances. That is deemed to be too elementary to require citation of authority.

True, in quite an early case, *Hooker v. Newton,* 24 Wis. 292, this court, on the strength of some few not very reliable or logically reasoned cases, held that it was proper to instruct

the jury in the obligatory form, as was done here. But such holding has not been followed. It is out of harmony with authorities in general and was, upon a full discussion of the matter, overruled in *Robinson v. Superior R. T. R. Co.* 94 Wis. 345, 68 N. W. 961. It was there distinctively held that punitory damages are not allowable as matter of legal right; that in all cases the court should decide whether, in any reasonable view of the evidence, punitory damages would be proper and, if so, to then instruct the jury what elements of fact are requisite to justify such damages and make it plain that whether to allow them or not is left to their sound discretion. To the same effect is *Tilton v. J. L. Gates L. Co.* 140 Wis. 197, 210, 121 N. W. 331.

The instruction was also erroneous because punitory damages are never to be visited upon a corporation for the wrongful conduct of its officers or agents in the absence of satisfactory proof of authorization of the particular act or ratification of it. *Robinson v. Superior R. T. R. Co.* 94 Wis. 345, 68 N. W. 961; *Cobb v. Simon,* 119 Wis. 597, 97 N. W. 276. That evidently was not appreciated by the circuit judge. Here there was no proof of such authorization. There was proof of mere abuse of authority which could not have been apprehended would occur when the corporate agents were placed in authority. However, there was conclusive evidence, as it seems, of ratification of the imprisonment after it occurred, so failure of the court to guard instruction in that respect was harmless.

Further assignment of error is made because the court failed to change the jury's finding convicting appellant upon the ground that its agent, when he detained respondent, did not honestly believe the latter to be guilty of having stolen the meat, and further in refusing to change the answer to the fourth question wherein the jury found that the agent acted in bad faith in detaining respondent and taking him to the police station. Both of these questions were evidently sub-

mitted to the jury on the theory that the defendant's agent is presumed to have known that the facts relied upon to charge respondent with having stolen the meat did not justify such charge; that the mere mistake of law, which was followed by a similar mistake of the public prosecutor and further dignified by mistake of the trial court, and only corrected by a decision here as involving a question of considerable difficulty, is a legitimate basis for holding that appellant's agents knew respondent was not guilty of larceny when he was treated as if he were guilty. That they had no such knowledge, in fact, is quite apparent. Therefore, our treatment of the first assignment of error condemns the rulings complained of.

So long as appellant's agents honestly supposed that the facts believed by them, and thereafter judicially found, to exist, and detained the accused, momentarily, with the purpose of immediately presenting the matter to the public prosecutor, and acting upon his advice, they cannot be held to have acted maliciously and dishonestly on the faith of the legal fiction, good in its place, that all men are presumed to know the law.

While it is often said that the presumption is, that every one knows the law, that is, in some respects, a legal relic. It is, in its broad sense, obsolete. It is so said, in effect, in all modern text-books, based on judicial authority. Lawson on Law of Presumptive Evidence at page 6 illustrates by quoting the language of an eminent judge that:

"There is no presumption in this country that every person knows the law: it would be contrary to common sense and reason if it were so. . . . If everybody knew the law, there would be no need of courts of appeal, whose existence shows that judges may be ignorant of law."

The legal presumption however exists, and is applicable wherever necessary to the due administration of justice. *Ignorantia legis neminem excusat,* is a rule of necessity and

is limited in its scope by the reason of it. Such reason is that otherwise mere ignorance in fact of the law would furnish immunity from punishment for violation of the criminal code and immunity from liability for actual loss for violations of personal and property rights. The necessity does not go further in civil matters so as to punish, punitively, on the strength of the legal presumption, which more often than otherwise is against the truth. It does not prevail against the real truth of the matter on the subject of reasonable belief, which is the gist of probable cause discussed in the forepart of this opinion. To apply it literally to all situations would, as said in *Brent v. State,* 43 Ala. 297, "take from the rule all its virtue, and make it odious to all right and just thinking men."

The foregoing renders it unnecessary to discuss any of the other errors assigned. Most of those not specially mentioned appertain to the claim for malicious prosecution which will not be again presented for adjudication. Therefore, judicial guidance for a new trial in that respect is not required.

*By the Court.*—The judgment is reversed, and the cause remanded with directions to dismiss it as to the claim for malicious prosecution, and for a new trial as to the claim for false imprisonment.

TIMLIN, J., dissents.