Rebecca HIRSCHFIELD, Plaintiff-Respondent,

v.

Odell HIRSCHFIELD, Defendant-Appellant.

Court of Appeals

*No. 83–927. Submitted on briefs February 6, 1984.—
Decided March 27, 1984.*
(Also reported in 347 N.W.2d 627.)

For the appellant the cause was submitted on the brief of *Linehan Law Offices* of Madison and *Daniel W. Linehan* of Madison.

For the respondent the cause was submitted on the brief of *William P. Nemer,* assistant district attorney, of Whitehall.

Before Foley, P.J., Dean and Cane, JJ.

CANE, J. Odell Hirschfield appeals an order denying his motion to expunge child support arrearages. He argues that the trial court erred by preventing him from presenting evidence that he made payments directly to or

spent money on the parties' children and by preventing him from raising the defense of laches. Because the defense of laches is not available in this type of action and because the record indicates that the trial court in its discretion denied the expungement after accepting Odell's offer of proof as fact, we affirm the order.

While Odell was not paying child support, the children's mother, Rebecca Ann Hirschfield, was receiving public assistance. The Trempealeau County Child Support Agency sought to recover the arrearages. It attached Odell's tax refund and instituted contempt proceedings against him. We are only presented, however, with an appeal from the order denying Odell's motion to expunge his arrearages.

At a hearing on the motion to expunge the arrearages, Odell agreed that he had failed to pay $18,792.25 in child support to the clerk of court as directed by the divorce judgment. Odell offered to prove that for thirteen years he had monthly advanced sums, at least as great as the judgment required, directly to the children and that he was "buying all their school clothes and a variety of other items." In apparent explanation of Odell's actions, his attorney stated: "[F]rom Mr. Hirschfield's point of view, he saw that these things weren't being done with the money that the state provided for support," and that "the kids wouldn't have [the] clothes on he was buying them." The trial court responded to Odell's offer of proof, stating:

"Even if you can prove everything, that won't relieve him of the arrearage. He had his . . . remedies to correct the situation years ago, but he did not avail himself of those. And, in the meantime, the taxpayer has picked up the price because of his mistake or failure to do so."

Odell argues, without citing any authority, that he is entitled to raise the defense of laches. That defense, however, is not available in an action to enforce a child sup-

port order. *Paterson v. Paterson,* 73 Wis. 2d 150, 155, 242 N.W.2d 907, 910 (1976).

Odell also argues, again without citing any authority, that he should have been allowed to present evidence that he made payments to or expenditures for the parties' children[1] to support his motion to expunge the arrearages. For the purpose of deciding the motion, however, the trial court accepted the proof Odell offered. Since the trial court assumed that Odell had advanced sums to and made expenditures directly for the children, it had no need to hear evidence relating to such proof. Contrary to Odell's argument on appeal, the real issue is whether the trial court properly denied expungement in light of this proof.

The Wisconsin appellate courts have not addressed this situation before. The supreme court has considered offsets against child support arrearages only when excess payments have been made because an order inadvertently required duplicated support payments, *see Foregger v. Foregger,* 40 Wis. 2d 632, 642, 162 N.W.2d 553, 557–58 (1968), *reh'g denied,* 40 Wis. 2d 632, 648b–49, 164 N.W.2d 226 (1969), and when a mistake resulted in payments after the child attained the age of majority, *see Poehnelt v. Poehnelt,* 94 Wis. 2d 640, 655–56, 289 N.W.2d 296, 303–04 (1980); *Anderson v. Anderson,* 82 Wis. 2d 115, 122–23, 261 N.W.2d 817, 820–21 (1978). The general rule, however, is that a parent ordered to pay child support is not entitled to credit for voluntary expenditures for the child not made in the manner specifically

---

[1] Odell's brief refers to payments made "to the children or their mother," and characterized the trial court's ruling as foreclosing a person "from ever seeking expungement of child support payments (*sic*) if he makes them directly to his wife." At the motion hearing, however, Odell's attorney offered to prove only that Odell made payments to or bought items for the children.

ordered.[2] Allowing credit for such payments or expenditures would condone the unilateral modification of court orders and interference with the custodial parent's right to decide how support money should be spent. *See Marriage of Dwan,* 439 N.E.2d 1005, 1009 (Ill. App. 1982) ; *Marriage of Bjorklund,* 410 N.E.2d 890, 893 (Ill. App. 1980) ; *Williams v. Budke,* 606 P.2d 515, 517 (Mont. 1980) ; *Marriage of Stenerson,* 566 P.2d 205, 207 (Ore. App. 1977) ; *Ross v. Ross,* 592 P.2d 600, 603–04 (Utah 1979). We find this a convincing reason to apply the general rule to this case.

Odell's offer of proof indicated that he disregarded the court order to pay support to the clerk of court because he did not agree with the way Rebecca was spending the money. He knew that while he failed to make payments as the court had ordered, the state was providing support money. Under the circumstances, the trial court did not abuse its discretion by denying expungement.

*By the Court.*——Order affirmed.

---

[2] *See* cases cited at 24 Am. Jur. 2d *Divorce and Separation* § 1077 at 1061–63 (1983).