185 Wis.2d 662 (1994)
517 N.W.2d 700
DOUGLAS COUNTY CHILD SUPPORT ENFORCEMENT UNIT FOR Dianne M. NIEMI, Petitioner-Appellant,
v.
Robert P. FISHER, Respondent-Respondent.[]
No. 93-3221-FT.
Court of Appeals of Wisconsin.
Submitted on briefs May 10, 1994.
Decided May 24, 1994.
*664 On behalf of petitioner-appellant, the cause was submitted on the briefs of Stephen R. Zuber of Superior.
On behalf of respondent-respondent, the cause was submitted on the brief of Chris A. Gramstrup of Superior.
*665 Before Cane, P.J., LaRocque and Myse, JJ.
LaROCQUE, J.
The Douglas County Child Support Agency, on behalf of Dianne Niemi, appeals an order dismissing her claim against Robert Fisher for child support arrears and interest.[1] The trial court denied relief on equitable grounds, finding that twentysix years had passed from the time Robert first began accumulating an arrearage, and sixteen years from the time the youngest child became an adult until the action was commenced. The court accepted the defenses of lathes, equitable estoppel and waiver to deny relief. We conclude that these doctrines do not bar the action in this case. We also hold, however, that the trial court is entitled to consider evidence that Fisher made child support payments directly to Niemi, and it may credit those payments toward arrearages. We therefore reverse the order of dismissal, and remand for further proceedings consistent with this opinion.
The parties to this action were divorced in 1966 in Douglas County. Niemi was awarded custody of two minor children and child support of $165 per month. The judgment provided that support payments be made through the office of the clerk of court.[2] Pursuant to a stipulation and order, Niemi removed the children to California immediately after the divorce. Fisher paid only a small amount of support through the office of the clerk of court. The parties' children reached majority in 1975 and 1977, respectively. The clerk's records apparently *666 showed an arrearage in excess of $18,000.[3] Except for several relatively brief periods, Fisher was continuously employed as a longshoreman in Superior from the divorce to the present. He never sought modification of the judgment. Fisher and Niemi gave starkly irreconcilable testimony as to whether he paid certain sums directly to her. Fisher claimed, with several exceptions when he was seasonally unemployed or enrolled in welding school in California, that he regularly made his support payments directly to Niemi, and that he eventually paid $200 per month to make up arrearages. He also said that she never claimed any arrearages. He indicated that he had stayed in her home in California at times after the divorce, including a visit there with his current wife.
Niemi, on the other hand, claimed that he paid no child support, except for a small sum in 1970. She described frequent arguments and threats to sue for child support, and said she failed to bring an action earlier only because she was without the means to hire an attorney. The trial court found incredible her claim that she was unaware of the availability of the child support agency to provide enforcement assistance.
Fisher testified that he destroyed his old records because he was unaware of the statute of limitations. He also indicated that because of the lengthy interim between the time the children reached majority and Niemi's action, his bank similarly had destroyed much of the relevant records. Fisher produced copies of bank money orders showing payments totaling approximately $3,300 for the years 1974, 1975 and 1976. *667 Fisher and Niemi also gave dramatically different testimony as to whether the bank money orders represented child support or other obligations, and whether in either case they represented all or only a fragment of his actual contributions.[4] Because the court concluded that Niemi was barred from asserting her claim, the court did not resolve these evidentiary conflicts.
[1]
The parties agree that this is an independent action seeking a money judgment for child support arrearages. They agree that an independent action is governed by the twenty-year statute of limitations, § 893.40, STATS., Kroeger v. Kroeger, 120 Wis. 2d 48, 353 N.W.2d 60 (Ct.App. 1984), and may not be brought until the child in question attains the age of majority. Because the two children here turned eighteen in 1975 and 1977, respectively, the action is within the statutory time.
[2]
We first review the trial court's conclusion that Niemi waived her right to support payments. Whether the facts fulfill a particular legal standard is a question *668 of law that we review de novo. Nottelson v. DILHR, 94 Wis. 2d 106, 115-16, 287 N.W.2d 763, 768 (1980). We reject the waiver defense under the facts presented. "waiver" is an intentional relinquishment of a known right. Intent to waive is an essential element of waiver. Bank of Sun Prairie v. Opstein, 86 Wis. 2d 669, 681, 273 N.W.2d 279, 284 (1979). While waiver can be established by actions as well as by words, Attoe v. State Farm Mut. Auto. Ins. Co., 36 Wis. 2d 539, 545, 153 N.W.2d 575, 579 (1967), we reject Niemi's silence alone as "action" demonstrating the intent to waive. Attoe approved the following language from a standard reference work:
The intent to waive may appear as a legal result of conduct. The actuating motive, or the intention to abandon a right, is generally a matter of inference to be deduced with more or less certainty from the external and visible acts of the party, and all the accompanying circumstances of the transaction, regardless of whether there was an actual or expressed intent to waive, or even if there was an actual but undisclosed intention to the contrary ....
Id. at 546, 153 N.W.2d at 579.
[3]
Niemi engaged in insufficient "external and visible acts" upon which to base an inference of intent to waive.[5] In contrast, and as an example, the insurer in Attoe filed an answer defending a lawsuit on the merits *669 and was found to have waived its "no-action clause" in the policy by engaging in conduct inconsistent with reliance on such a defense.[6] We know of no authority for the proposition that prolonged silence alone, in context of an action to collect child support, constitutes conduct for the purposes of invoking the defense of an intentional waiver.
[4]
Laches is also not available here. Our supreme court in Paterson v. Paterson, 73 Wis. 2d 150, 242 N.W.2d 907 (1970), unequivocally stated that the equitable defense of laches is not available in an action or proceeding brought to secure enforcement of a child support order in a divorce action. Id. at 155, 242 N.W.2d at 910. As is the case here, Paterson involved an independent action seeking a judgment for the total arrears accumulated prior to the minor child's majority. Id. at 153, 242 N.W.2d at 909. We are bound by prior decisions of our supreme court. Professional Office Bldgs. v. Royal Indem. Co., 145 Wis. 2d 573, 580, 427 N.W.2d 427, 429-30 (1988).
[5]
Our supreme court, however, held for the first time in Harms v. Harms, 174 Wis. 2d 780, 498 N.W.2d 229 (1993), that equitable estoppel may bar a custodial parent from claiming or collecting child support arrearages. Id. at 785, 498 N.W.2d at 231. This defense requires a showing of three elements: action or inaction, which induces reliance by another, to his or her detriment. Id. In Harms, the custodial parent removed *670 the children from the state in violation of the court order. She also sent a letter to the father telling him that he no longer had to pay support. Id. The father relied upon these actions. Id. Reliance was to his detriment. He forfeited his right to challenge the removal. Id. The removal also inhibited his ability to visit on a regular basis. Id.
Harms is readily distinguishable. There, the custodial parent violated a court order barring removal of the children to another state, and then avoided potential consequences by writing a letter absolving the payor from future support. Here, Niemi's removal was pursuant to stipulation and order and violated no provision of the judgment. Even Fisher does not assert that Niemi told him he did not have to pay.
[6]
Further, in weighing the relative equity of the parties' positions, the trial court's finding that Niemi's assertion of ignorance of the availability of a government agency to provide assistance is not determinative. We accept as a fact that Niemi knew or should have known that the assistance was there. Her failure to act in that respect is no more compelling than Fisher's contention that he was ignorant of the statute of limitations. While the maxim "ignorance of the law is no excuse" is in the broad sense obsolete and contrary to common-sense, it exists as a legal presumption and is applicable where necessary to the due administration of justice. Topolewski v. Plankinton Parking Co., 143 Wis. 52, 72-73, 126 N.W. 554, 561 (1910). It may be used in civil matters to prevent immunity from liability for actual loss for violations of another's personal or property rights. Id. at 73, 126 N.W. at 561. We believe the maxim applies here to Fisher's ignorance of the statute of limitations.
*671 [7]
Finally, for purposes of claiming estoppel, the party's reliance must be reasonable. In re Estate of Alexander, 75 Wis. 2d 168, 183, 248 N.W.2d 475, 484 (1977). The naked fact that Niemi delayed enforcement of an unmodified judgment is not a reasonable basis upon which Fisher may base a belief that support is no longer owed. A custodial parent's right to reimbursement for that part of the other parent's debt to the children that she paid should not easily be forgiven. Equitable estoppel and waiver are available defenses to actions for arrearages, but they are not available under the facts here.
[8]
Despite this conclusion, we also hold that the trial court retains discretion to grant credit for direct payments of child support. We recognize that Hirschfield v. Hirschfield, 118 Wis. 2d 468, 470-71, 347 N.W.2d 627, 628 (Ct.App. 1984), states, "The general rule ... is that a parent ordered to pay child support is not entitled to credit for voluntary expenditures for the child not made in the manner specifically ordered." Hirschfield rejected the obligor's attempt to expunge arrearages based upon sums paid directly to the children, and for clothes and other necessities purchased for them, in violation of the judgment requiring payment through the clerk of court.
[9]
We do not read Hirschfield to mandate that the trial court ignore direct payments in every circumstance. In Hirschfield, the custodial parent was receiving public assistance. Id. at 469, 347 N.W.2d at 628. Moreover, the payments were made directly to the children, thereby depriving the custodial parent of the right to determine how support money should be spent. *672 Id. at 469-71, 347 N.W.2d at 628. Here, the payments were allegedly made to the custodial parent, and she was not receiving public assistance. Although the present case demonstrates yet another good reason, judicial economy, to require a payor to direct payments to the clerk of court, we do not impose a bright-line rule. Rather, the trial court retains the discretion to accept evidence of direct payment where it determines it furthers a reasonable and equitable result. We therefore conclude that the court did not erroneously exercise its discretion by permitting Fisher to introduce evidence of direct payments to Niemi.
There remain disputed material facts with respect to whether the money orders were in payment of child support and how much, if anything, Fisher actually paid toward the ordered child support for which records were no longer available, and we remand for resolution of these issues. The trial court also retains the discretion to allow the parties to present further evidence.
By the Court.Order reversed and cause remanded with directions.
NOTES
[] Petition to review denied.
[1] This is an expedited appeal under RULE 809.17, STATS.
[2] The current statute, § 767.29(1), STATS., also requires that family court judgments for child support direct payment to the clerk of court.
[3] Although, at request of counsel, the court took judicial notice of the records of the clerk of court relating to support payments and a summary calculating "annual arrearages," the appeal record does not include those documents.
[4] The divorce judgment required Fisher to provide hospital and medical insurance for the minor children. Dianne testified that the money orders were not child support, but were for medical insurance deductibles, co-payments and insurance premiums that she incurred. She described several incidents in which one of the children had required hospitalization and treatment for various accidents. Fisher produced a company employee to show that the children were at all times insured under his employer's health insurance program. While Dianne denied that Fisher informed her of his insurance when she spoke to him about reimbursement, Fisher also denied ever having been asked to provide insurance benefits.
[5] The trial court did not make factual findings with respect to the conflicting evidence regarding whether Dianne complained or threatened action for arrearages as she testified, or was silent as Fisher testified. For purposes of analysis of available defenses, we will assume that the court accepted Fisher's description.
[6] A no-action clause usually provides that no action will lie against the insurer until the insured's obligation to pay is determined by a final judgment or agreement. Attoe v. State Farm Mut. Auto. Ins. Co., 36 Wis.2d 539, 547-48, 153 N.W.2d 575, 580 (1967).