**STATE of Alaska, DEPARTMENT OF REVENUE, CHILD SUPPORT ENFORCEMENT DIVISION, Appellant,**

**v.**

**Barbara CAMPBELL, Appellee.**

No. S–7203.

Supreme Court of Alaska.

Feb. 7, 1997.

Diane L. Wendlandt, Assistant Attorney General, Anchorage, Bruce M. Botelho, Attorney General, Juneau, for Appellant.

Barbara Campbell, Anchorage, pro se.

Before COMPTON, C.J., and RABINOWITZ, MATTHEWS, EASTAUGH and FABE, JJ.

*OPINION*

MATTHEWS, Justice.

## I. INTRODUCTION

Two issues are presented in this appeal by the Department of Revenue, Child Support Enforcement Division (CSED). The first is whether the superior court erred in holding that CSED abused its discretion by failing to reduce arrearage collection payments on a child support order. The second issue is whether the court erred in ordering CSED to give credit to a non-custodial parent for

**3.** I agree with the majority's disposition of the transportation cost modification issue.

voluntary purchases of clothing for the children made outside of her ongoing support obligation.

## II. *FACTS AND PROCEEDINGS*

Barbara Campbell is the mother of four minor children. At all times relevant to this appeal, three of the children were in their father's custody. The fourth child, Sheila, was in the custody of Campbell's father in Washington state. Campbell was engaged in a legal battle to obtain custody of Sheila. Campbell was ordered to pay child support under Civil Rule 90.3 for the three children in the custody of their father. The amount of support owed by Campbell for the period between July 1993 and December 1994 is the subject of this litigation.

At the times in question, Campbell worked forty hours a week and earned $12 an hour. Under a Notice and Finding of Financial Responsibility dated February 26, 1992, Campbell was initially ordered to pay ongoing support of $547 per month, plus past support of over $6,000. Campbell appealed and requested an informal conference. After the informal conference, her support obligation was increased to $601 per month in ongoing support, plus over $11,000 in arrears.

Campbell appealed again, requesting a formal hearing. The hearing was held December 15, 1992. After the hearing, the hearing officer concluded that there was "no proof of good cause by clear and convincing evidence to adjust the obligations determined" under Rule 90.3. But, noting that Campbell had submitted evidence indicating that her work week was to be cut to twenty hours starting January 1, 1993, the hearing officer concluded that Campbell should be required to pay ongoing support of $308 per month from that point forward. The Department of Revenue adopted the hearing officer's report, and ordered Campbell to pay the $308 per month for ongoing support plus approximately $150 per month toward satisfaction of the arrears on her account.

Campbell continued to work a forty-hour week, however, throughout 1993. Upon learning this, CSED issued an Informal Conference Decision on Modification, effective July 1, 1993, setting Campbell's ongoing support obligation at $594 per month under Rule 90.3. Campbell appealed, and argued at a formal hearing that she could not afford that level of support given her regular expenditures as well as the costs of the Washington custody proceedings, car repairs, and purchases of clothing which she gave directly to the children.

After this hearing, on November 9, 1993, the Department concluded that "[t]he expenses described by [Campbell], while significant, are not extraordinary.... Taken as a whole ..., the evidence presented does not constitute proof of extraordinary expenses that would cause substantial hardship in the absence of variation of the award." The Department went on to note that it would cause "significant financial difficulties" if the payment for arrears was maintained at $150 per month while the ongoing support was raised from $308 to $594 per month. Thus, it concluded "the payment for arrears should be kept to a minimum.... [CSED] should take this into account when establishing an amount of arrears to be collected with the modified ongoing support payment."

Campbell appealed to the superior court, again arguing that she could not afford the payments. Oral argument was held on January 19, 1995, and the superior court issued a ruling from the bench. The court indicated that a "manifest injustice" had occurred in that Campbell was being asked to pay increased child support, plus $150 per month in arrears, in addition to necessary car repairs and other expenses, and in that she was also clothing the children because the father was not buying adequate clothing. The court reversed the CSED decision and remanded for a redetermination. At this point in the transcript, the ruling becomes less clear. The court reiterated that the ongoing support of $594 was appropriate but that Campbell's arrearage payments should be reduced or eliminated so that she would not be paying more than that $594 per month. The court also indicated that Campbell should receive a credit for clothing she gave directly to the children.

The court initially entered a written order, dated the same day as the oral ruling, reversing CSED's decision to increase the support payments to $594 per month. CSED filed a motion for clarification, noting that the oral ruling had indicated that the decision to raise support payments to $594 would not be disturbed. The motion was accompanied by a Notice of Filing Accounting Information and an affidavit by a CSED employee listing the amounts collected from Campbell between July 1, 1993, and December 1, 1994, the period in question.[1] The affidavit indicated that, in most months, CSED actually collected less than $594 from Campbell. More than $594 was collected in six of the seventeen months. Still, the total collected over that period left an additional arrearage of $655.04.

CSED's Notice of Filing Accounting Information and Motion for Clarification read as follows:

CSED proposes an accounting in which the amounts collected between July 1, 1993 and December 1994 will be applied first to the support obligation for the month in which the amount was collected, with the remaining balance, if any, being applied to ongoing amounts which accrued between July 1, 1993 and December 1, 1994. This would still result in arrears of $655.04 accrued between July 1, 1993 and December 1, 1994. This amount would, of course, be added to the arrears which accrued prior to July 1, 1993, and any interest which has accrued on those arrears.

After considering CSED's Motion for Clarification, the court on May 31, 1995, issued an Amended Final Order on Appeal, holding that "it is clear that this court's written order of January 19, 1995 is not consistent with the Court's decision on the record on that date." The amended order read:

For the reasons set forth in open court on January 19, 1995, the Court finds that Child Services Enforcement Division ("CSED") abused its discretion by failing to reduce Appellant's arrearage payment when Appellant's support payment was raised from $308 per month to $594 per month. CSED's decision raising Appellant's support amount was not an abuse of discretion or otherwise objectionable. Therefore, CSED is hereby ordered to apply any amount paid over $594 for any month or months to ongoing support for Appellant's 3 children and to credit Appellant for purchases of clothing and other items for those children. CSED's accounting properly provides those credits and is approved.

CSED appeals from this amended final order, arguing (1) that the court erred in finding that CSED abused its discretion in failing to reduce the arrearage payment

1. The amounts collected and arrears accrued were listed in the affidavit as follows:

|  | Month | Amount Collected | Arrears Accrued Between July 1993 and December 1994 |
|---|---|---|---|
| 1993 | July | $ 310.28 | $ 283.72 |
|  | August | 460.28 | 417.44 |
|  | September | 600.00 | 411.44 |
|  | October | 450.00 | 555.44 |
|  | November | 429.44 | 720.00 |
|  | December | 450.00 | 864.00 |
| 1994 | January | 450.00 | 1,008.00 |
|  | February | 432.26 | 1,169.74 |
|  | March | 489.14 | 1,274.60 |
|  | April | 618.33 | 1,250.27 |
|  | May | 457.73 | 1,386.54 |
|  | June | 456.38 | 1,524.16 |
|  | July | 607.81 | 1,510.35 |
|  | August | 421.77 | 1,682.58 |
|  | September | 632.78 | 1,643.80 |
|  | October | 600.08 | 1,637.72 |
|  | November | 1,576.68 | 655.04 |

The affidavit indicates that collections were made primarily through income withholding.

when the evidence demonstrated that CSED collected less than the ordered ongoing support for the period in question; and (2) that a credit for the purchases of clothing is unwarranted.[2]

### III. *DISCUSSION*

The meaning of the amended final order is not clear. Taken literally, the amended final order does not require CSED to take any action. The final sentence of the order states: "CSED's accounting properly provides those credits and is approved." The words "those credits" evidently refer to credits for purchases of clothing and to credits for monthly collections in excess of $594. With respect to monthly collections in excess of $594, we interpret the amended final order literally because the accounting dealt in detail with CSED's treatment of the amounts collected and the final sentence of the order must mean that the court found that these amounts were properly credited. With respect to credits for clothing purchases, we do not think a literal interpretation is appropriate because the accounting did not give any credit for clothing purchases. We therefore interpret the final sentence of the order as applying solely to cash collections and not to clothing purchases.

■ Based on this interpretation, we conclude that we need not review the trial court's conclusion that CSED abused its discretion by failing to reduce arrearage payments when monthly support was raised. The abuse of discretion conclusion is dictum which has no consequences.

■ We proceed to review that portion of the amended final order which requires CSED to give credit to Campbell for purchases of clothing she made for the children in addition to her support payments. The superior court reasoned that CSED erred in "not considering" those expenditures.

CSED argues that, as a matter of law, voluntary payments or gifts to children by a noncustodial parent do not entitle that parent to a credit against his or her child support obligations.

This court addressed voluntary payments outside of child support payments in *Young v. Williams*, 583 P.2d 201 (Alaska 1978):

> Our overall conclusion is that the superior court has not erred in failing to grant Young the $800.00 credit. The majority position is that payments voluntarily made to the children are not to be credited against child support obligations. The rationale is that such voluntary payments to the children quite often are intended for particular purposes whereas the manner in which child support payments are used to meet the children's basic needs is left to the discretion of the parent or guardian with custody.

*Id.* at 203 (footnotes omitted). *Young* thus noted the "general rule" that direct payments to children may not be credited against a child support obligation. *Id; see also Glover v. Glover*, 268 Ark. 506, 598 S.W.2d 736, 737 (1980); *Fearon v. Fearon*, 207 Va. 927, 154 S.E.2d 165, 168 (1967); *Hirschfield v. Hirschfield*, 118 Wis.2d 468, 347 N.W.2d 627, 628 (App.1984); *cf. Ogard v. Ogard*, 808 P.2d 815, 817 (Alaska 1991) (holding that *Young* rule does not apply to period between separation and interim child support award, where no support order exists).

Application of the *Young* rule may at first seem harsh here. Campbell testified at length that the father was spending both his public assistance and her support payments on himself and not properly clothing the children. If true, one can certainly understand her desire to provide for the children directly. *Young* itself left the door open for courts to credit direct payments to the children in some instances: "[A debtor spouse]

---

**2.** At oral argument, Campbell noted that she had recently taken custody of one of the three children from the father. CSED therefore reduced her ongoing support payments effective December 1, 1994. Thus, the payments at issue are those between July 1, 1993, when the payments were increased, and December 1, 1994, when they were decreased. The superior court declined to treat the issue as moot because the amount of accrued arrears was at issue.

Since the superior court's decision, Campbell apparently suffered a head injury for which she receives workers' compensation, so that her support payments have been further reduced; she informed this court in writing that CSED is considering a "hardship" ruling in her case.

cannot, as a matter of law, claim credit on account of payments voluntarily made directly to the children, though special considerations of an equitable nature may justify a court in crediting such payments on his [or her] indebtedness to the plaintiff when that can be done without injustice to the [custodial spouse]." 583 P.2d at 203 (quoting *Briggs v. Briggs*, 178 Or. 193, 165 P.2d 772, 777 (1946)).

But *Young* also noted strict limitations on the grant of credit by a court for voluntary payments: "In those few cases in which credit has been granted, it is for payments made at the request of the parent or guardian with custody or for cash gifts used for child support, the disbursement of which was controlled by the parent or guardian with custody." 583 P.2d at 203.

The rationale of the *Young* rule was articulated by the Court of Appeals of Wisconsin as follows:

> The general rule, however, is that a parent ordered to pay child support is not entitled to credit for voluntary expenditures for the child not made in the manner specifically ordered. Allowing credit for such payments or expenditures would condone the unilateral modification of court orders and interference with the custodial parent's right to decide how support money should be spent.

*Hirschfield*, 347 N.W.2d at 628 (footnote omitted). The Supreme Court of Arkansas gave an additional reason:

> "Although we are not insensitive to the generosity of a noncustodial parent, as here, who provides additional support for his children to that expressly ordered by

the court, we do not, as a matter of law, give credit for voluntary expenditures. This is particularly true in child support cases in view of the fact that the custodial parent makes arrangements for the child's care "in reliance on a proper compliance with the decree" by the noncustodial parent.

*Glover*, 598 S.W.2d at 737 (citations omitted).

If Campbell's allegations are true, and the father wastes the money that he receives, then her argument that she should be given credit for direct gifts of clothing to the children has some force. But her remedy for the father's transgressions lies elsewhere—in a motion to modify the allowable form of payment, as the Department suggests, or even a motion to change custody.[3] Campbell cannot simply stop paying under the support order and start making the purchases that she believes the father should have made.

■ Since the father has custody, it is the father's prerogative here to decide how to spend the support money on the children. If he is not fulfilling his parental role responsibly, then Campbell may petition for custody or take other measures to ensure that the children are provided for. But a non-custodial parent should not be allowed to make the decisions that are by law entrusted to the custodial parent.[4]

## IV. CONCLUSION

For these reasons, that portion of the amended final order which requires CSED to credit Campbell's clothing purchases for the

---

**3.** We note that none of Campbell's allegations were substantiated by anything other than her own assertions at oral argument. But if the father is treating the payments as his own, as the superior court seemed to believe, then he is doing so wrongly, because the custodian receives child support payments on behalf of the child:

> The fact that this court has not imposed the duties of a full-fledged trustee on the parent, *Young v. Williams*, 583 P.2d 201, 203 (Alaska 1978) does not imply that the parent is thereby deemed the owner of these funds. Our reluctance in *Young* to impose formal fiduciary responsibilities upon the custodial parent cannot be used to justify a diminution in his or her

responsibility to receive and dispose of such monies exclusively for the sake of the child. *Malekos v. Yin*, 655 P.2d 728, 734 n. 2 (Alaska 1982) (Rabinowitz, J., dissenting).

**4.** *See also* 2 Homer H. Clark, *The Law of Domestic Relations* § 18.3, at 399–400 (2d ed. 1987):

> The [non-custodial] parent has the duty of providing support in the amount specified by the decree, but he does not have the right to say how the money shall be spent. If he is permitted to make presents or other direct payments to the child, this violates the custodian's authority and responsibility for the care to be given to the child.

children against her child support obligation is REVERSED.