Tom O'BRIEN, Petitioner-Respondent and Cross-Appellant,

v.

Doris (O'Brien) FREILEY, Respondent-Appellant and Cross-Respondent.

Court of Appeals

*No. 85–0520. Submitted on briefs December 30, 1985.—Decided March 5, 1986.*

(Also reported in 387 N.W.2d 85.)

For the respondent-appellant and cross-respondent, the cause was submitted on the briefs of *Elizabeth Adelman* of Milwaukee.

For the petitioner-respondent and cross-appellant, the cause was submitted on the brief of *Michael J. Gross* of Waukesha.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

BROWN, P.J.   Both parties appeal from the post-judgment order finding Thomas O'Brien in contempt for nonpayment of child support, reducing the child support arrears owed to Doris (O'Brien) Freiley and determining the current level of support. Freiley claims that insufficient justification existed to reduce the arrears in that the trial court considered inappropriate factors and failed to consider other more appropriate factors, including the existence of a stipulation. O'Brien cross-appeals, claiming no basis existed for the contempt finding and that the trial court erred in ordering him to pay part of the arrears directly to the county department of social services. We affirm in part, reverse in part and remand for further proceedings.

The parties have been divorced since 1974. They have three children, two of whom are now over eighteen. The divorce stipulation provided that Freiley would have custody of the three children and O'Brien would make monthly child support payments of $300. In July 1976, O'Brien remarried and his support obligation was, by stipulation, increased to $365 per month. In August 1978, the circuit court denied O'Brien's request to reduce his support obligation and arrears. The

parties' oldest child, Laura, was emancipated in September 1982. In November 1982, the parties stipulated that custody of their middle child, Theresa, be transferred from Freiley to O'Brien. The stipulation, approved by the circuit court, provided "that in all other respects, said judgment is to remain the same." Theresa reached the age of majority in January 1984. The youngest child, Steven, remains in Freiley's custody.

A hearing was held in December 1984 upon an order to show cause brought by Freiley for: contempt, an increase in support, a wage assignment and a lien upon O'Brien's real estate. The hearing also dealt with O'Brien's countermotion to establish a figure for arrears and to modify support. The circuit court heard evidence of the parties' financial status, including their employment and other sources of income, expenses and assets. The trial court found that court records revealed child support arrears of "$17,345 owed to defendant [Freiley] and $5,975 owed to the Department of Social Services for support provided by the aid to dependent children's program."

The trial court, however, allowed O'Brien a credit against the arrearage of $8,345. The credit consisted of expenditures O'Brien made on behalf of or for the children and a retroactive support reduction calculated by applying the DHSS percentage guidelines to O'Brien's income in the years 1979 to 1984.[1] In doing the latter, the court reviewed each year separately and adjusted the arrears only for those years in which application of the percentage guidelines resulted in a re-

---

[1] The court considered the August 1978 order denying reduction of arrears to be *res judicata* as to the amounts addressed therein and therefore deemed only the obligations for 1979 and thereafter to be subject to retroactive modification.

duced support obligation. The trial court apparently perceived that while the law allows retroactive decreases in support, it does not allow retroactive increases; therefore, where there were "lean" years, the court felt empowered to reduce support; but where there were prosperous years, the court believed it was not empowered to take these years into account.[2]

The trial court then concluded that O'Brien was in contempt of court for his failure to make payments despite having the ability to pay; it imposed and stayed a sentence of ninety days in the county jail. O'Brien was ordered to make wage assignments of $70 per week towards his arrears and current support obligation to purge himself of the contempt.

We first address Freiley's arguments. Freiley initially contends that the trial court abused its discretion by reviewing each year separately and adjusting only for the "lean" years rather than studying all the years

[2] The court thus gave O'Brien credit on the arrears for the difference between the previously determined obligation of $4,380 per year ($365 × 12) and the amount indicated by the percentage guidelines as follows:

| Year | % Guideline | | Credit |
| --- | --- | --- | --- |
| 1979 | (29%) | $3,534 | 846 |
| 1980 | (29%) | No Change | |
| 1981 | (29%) | No Change | |
| 1982 | (29%) | No Change | |
| 1983 | (17%) | $3,240 | 1,140 |
| 1984 | (17%) | 2,760 | 1,620 |
| | | Total | $3,606 |

as a whole to see if retroactive modification was justified. Freiley recognizes that the circuit court lacks the power to retroactively increase support. *Whitwam v. Whitwam,* 87 Wis. 2d 22, 30, 273 N.W.2d 366, 370 (Ct. App. 1978). She argues persuasively, however, that where the income of the payor spouse fluctuates, "it is inequitable to look at each year separately, decrease for lean years and leave alone for the fat years," and that "the Court in justice and equity could have and should have taken a broad view in deciding whether to decrease support."

■■

We agree. We observe that although reduction of support arrears is a matter within the sound discretion of the trial court, such arrears are to be canceled only upon "cause or justification." *Whitwam* at 30, 273 N.W.2d at 370; *Rust v. Rust,* 47 Wis. 2d 565, 570, 177 N.W.2d 888, 891 (1970).[3] Retroactive modification of support arrears is, therefore, a discretionary remedy which should have as its aim a result which is just in light of all the circumstances. *See Rust* at 571, 177 N.W.2d at 891. We are satisfied that an unjust result is reached if O'Brien's arrears are reduced because of a decrease in income during some years if, over the period of arrearage as a whole, his income stayed the same or actually increased, as Freiley asserts to be the case here.

For the trial court to balance the amount of O'Brien's arrears over the entire period as against his

---

[3] We find no authority to support Freiley's contention that the "cause or justification" standard is more stringent than the "change in circumstances" standard for prospective modification of support, precluding reduction of arrears because of fluctuations in income.

ability to pay for the same period is not equivalent to its granting a retroactive increase for the prosperous years. Rather, it is analogous to an equitable setoff or recoupment,[4] having the effect of preventing a windfall to O'Brien arising out of his fluctuating income. Because the court should have considered the totality of circumstances to see if recoupment or setoff was appropriate, we reverse and remand directing reconsideration of the order reducing arrears.

During reconsideration, the trial court may apply the percentage guidelines in determining O'Brien's yearly ability to pay vis-a-vis what he was supposed to pay. We emphasize, however, that only after considering all past years, "fat" and "lean," may the trial court make a determination of credit to arrears.

In allowing the trial court's use of the percentage guidelines, we are rejecting Freiley's contention that

---

[4] Setoff and recoupment are doctrines relating to a demand that a defendant has against a plaintiff arising out of a separate transaction (setoff) or the same transaction (recoupment). *See Zweck v. D P Way Corp.,* 70 Wis. 2d 426, 433–34, 234 N.W.2d 921, 925 (1975). While they are thus not strictly applicable here, the underlying policy is instructive. Recoupment is "[a] keeping back something which is due, because there is an equitable reason to withhold it." Black's Law Dictionary 1146 (5th ed. 1979). The doctrine of recoupment permits a transaction which is made the subject of suit by the plaintiff to be examined in all its aspects and a judgment to be rendered that does justice in view of the transaction as a whole. *See* 20 Am.Jur. 2d *Counterclaim, Recoupment, and Setoff* § 6 (1965). Setoff is a mode which equity adopts to compel the ultimate payment of a debt by one who in justice, equity and good conscience ought to pay it. *See id.* at § 7. Equity will permit an equitable setoff whenever justice requires it. *Piotrowski v. Czerwinski,* 138 Wis. 396, 400, 120 N.W. 268, 269 (1909).

it was error for the trial court to use the guidelines in calculating the reduction of the arrears. The basis for this claim is that the guidelines were not promulgated by statute until 1982. *See* ch. 20, secs. 1785 and 1788p, Laws of 1981. In years immediately previous, trial courts determined the amount of reasonable and necessary support after considering various listed factors, including "[s]uch other factors as the court may in each individual case determine to be relevant." Section 767.25(1), Stats. (1979–80). As the trial court here recognized, however, while the percentage guidelines may not apply mandatorily to the earlier years of the arrearage, it is still reasonable to consider them because they are a helpful aid in determining a fair amount of support. The trial court's reasoning was not an abuse of discretion; we affirm this aspect of the order.

Next, Freiley asserts that the trial court abused its discretion in giving O'Brien credit for voluntary expenditures made on the children's behalf, which included uninsured medical payments, gifts, vacations, clothing and shoes, and a car valued at $1,500 which O'Brien gave to daughter Laura.

██
This issue was decided in *Hirschfield v. Hirschfield,* 118 Wis. 2d 468, 347 N.W.2d 627 (Ct. App. 1984). A parent ordered to pay child support is not generally entitled to a credit for voluntary expenditures for the child or children not made in the manner specifically ordered. *Id.* at 470–71, 347 N.W.2d at 628. Allowing credit for such payments or expenditures would condone the unilateral modification of court orders and interference with the custodial parent's right to decide how support money should be spent. *Id.* at 471, 347 N.W.2d at 628.

Some states have allowed credit for expenditures made under "compulsion of circumstances" or with the express or implied consent of the custodial parent to accept such alternate forms of payment.[5] The trial court here made no findings supporting the application of any of these exceptions to the general rule. In fact, the court acknowledged that the expenditures and presents were properly deemed gifts. It was therefore an abuse of discretion for the trial court to credit O'Brien for voluntary expenditures and gifts.

We next address whether the trial court abused its discretion in the manner that it relieved O'Brien from the terms of the 1982 stipulation. We conclude that it did. That stipulation, which was approved by court order, provided for the transfer of custody of Theresa from Freiley to O'Brien, with all other provisions of the judgment to remain unchanged. Although the trial court acknowledged the existence of the stipulation in its findings of fact, it failed to give any reason for declining to give it full effect. O'Brien obtained custody of Theresa in exchange for agreeing to maintain support payments at the same level. He is thus in a poor position to object to the enforcement of that agreement. *See Rintelman v. Rintelman,* 115 Wis. 2d 206, 208–09, 339 N.W.2d 612, 613 (Ct. App. 1983), *aff'd,* 118 Wis. 2d 587, 348 N.W.2d 498 (1984).

The trial court's failure to address the stipulation or to explain why O'Brien should be relieved of this ob-

---

[5] *See, e.g., Guri v. Guri,* 448 A.2d 370 (N.H. 1982); *Gardner v. Perry,* 405 A.2d 721 (Me. 1979); *Dalton v. Dalton,* 367 S.W.2d 840 (Ky. 1963); *and see, generally,* Annot., 47 A.L.R.3d 1031, 1039–44 (1973 and Supp. 1985).

ligation when addressing the arrearage issue compels us to direct the trial court to properly exercise its discretion in light of sec. 806.07, Stats., relating to relief from stipulations.

Finally, Freiley complains that the trial court looked solely at O'Brien's taxable income to determine his financial resources when calculating the support modification. Freiley points to evidence in the record of other resources available to O'Brien, including unemployment compensation benefits received during three years, money received as an inheritance and as gifts, and certain employment benefits including an expense account.

Section 767.32(1), Stats., requires that each parent's "earning capacity and total economic circumstances" be considered when a judgment providing for child support is modified. No exception is made for moneys received from extraordinary sources. *Sommer v. Sommer,* 108 Wis. 2d 586, 591, 323 N.W.2d 144, 147 (Ct. App. 1982). We therefore agree that the trial court should have considered any moneys available to O'Brien in addition to his taxable income.[6]

The trial court did acknowledge in its findings of fact that O'Brien had received the above-noted benefits and moneys and expressly relied on some of those facts in its determination of O'Brien's ability to pay in 1984 and its resultant finding of contempt. Further, in ruling from the bench on December 18, 1984, the court in-

---

[6] While a payor spouse's "total economic circumstances" are relevant in that they establish ability to pay support, we do not decide whether the trial court may consider, as additional financial resources, any employment benefits received which do not translate into disposable income. We observe, however, that *Sommer* speaks of "moneys," not all conceivable economic benefits.

dicated that the inheritance would be included in O'Brien's 1984 income for the purpose of calculating modified support.

Beyond this, it is unclear from the record and the trial court's decision whether the modification took into account only O'Brien's taxable income as opposed to other moneys received. Simple calculations demonstrate that either the court's arithmetic was incorrect or factors other than adjusted gross income were used in determining credits for the years 1979, 1980 and 1983.[7] The record does not clearly support a finding one way or the other as to whether the court considered O'Brien's "total economic circumstances" in modifying O'Brien's arrears and current support obligation. Therefore, upon remand, we direct the trial court to

---

[7] O'Brien's reported individual adjusted gross income for 1979 was $11,164 (the figure given as O'Brien's reported 1979 income in the trial court's decision). $11,199 was reported as adjusted gross income on his federal joint tax return for 1979. The trial court reported the applicable guideline percentage for 1979 to be 29% and calculated the revised 1979 support obligation as $3,534. However, 29% of $11,164 is $3,238 and 29% of $11,199 is $3,248.

For 1980, O'Brien's returns reported his adjusted gross income as $13,736, a figure adopted in the court's findings of fact. The court again held 29% to be the applicable guideline percentage and calculated the revised 1980 support obligation as unchanged, indicating that it was equal to or greater than $4,380. However, 29% of $13,736 is only $3,983.

For 1983, O'Brien reported adjusted gross income of $20,066. The trial court's findings of fact give the figure as $20,660—presumably a typographical error—and, using 17% as the applicable percentage, the court calculated a revised 1983 obligation of $3,240. However, 17% of $20,066 is $3,411 and 17% of $20,660 is $3,512.

No obvious explanation for these discrepancies appears of record.

make explicit the economic resources considered in arriving at its revised support figures so that the court's exercise of sound discretion under sec. 767.32(1), Stats., appears of record.

We turn now to the issues raised by O'Brien's cross-appeal. First, Freiley concedes that the trial court's order improperly directs O'Brien to make payments to the county department of social services in reimbursement for benefits received by Freiley, and we reverse that portion of the order with directions that the trial court vacate it. The law is clear that, absent contrary statutory authority, the department may recover only from the immediate recipient of the funds. Section 49.195(1), Stats.; *Richland County Department of Social Services v. McHone,* 95 Wis. 2d 108, 110, 288 N.W.2d 879, 881 (Ct. App. 1980). We observe that in its oral ruling the trial court ordered O'Brien to pay Freiley, who would in turn reimburse the department. Upon remand, the trial court shall revise its order to comply with its original plan by requiring O'Brien to make payments to Freiley on the total amount of the arrears as calculated by the trial court on remand.

O'Brien's remaining contentions are that contempt was not an available remedy and that the record demonstrates no basis for a finding of contempt. The first assertion is devoid of merit. Contempt is an available and proper means of enforcing support obligations. Sections 767.30(3) and 767.305, Stats.; *Rust,* 47 Wis. 2d at 570–71, 177 N.W.2d at 891.

Secondly, the evidence amply supports a finding of willful nonpayment despite ability to pay. The court found O'Brien's 1984 estimated income to be $17,000 and noted that O'Brien had an expense account of ap-

proximately $100 per week, sold a car and received an inheritance which allowed him to deposit $6,700 to his savings account and only paid $1,100 in child support in 1984 despite an obligation of $365 monthly.

O'Brien asserts that this failure to pay was not the result of any willful conduct and that he was financially unable to pay. The trial court, however, found that as to his 1984 obligations he *was* able to pay. That finding is not clearly erroneous. O'Brien has asserted no reason other than financial inability to explain his failure to pay. We conclude that the record supports a finding that O'Brien's failure to pay was willful and not a result of inability to pay. Therefore, we affirm the finding of contempt.

*By the Court.*—Order affirmed in part; reversed in part and cause remanded with directions. No costs to either party.