IN RE the MARRIAGE OF: Carolyn M. WOODMAN-
SEE, Petitioner-Appellant,

v.

Lewis M. WOODMANSEE, Respondent.

Court of Appeals

*No. 89-0270. Orally argued May 4, 1989.—Decided June 6, 1989.*

(Also reported in 444 N.W.2d 393.)

For petitioner-appellant there were briefs and oral argument by *Michael P. Weiler* of *Merriam, Weiler & Buslee,* Ladysmith and *Sherwood K. Zink,* Madison.

For respondent there was a brief and oral argument by *Gordon K. Morris,* Bruce.

Before Cane, P.J., LaRocque and Myse, JJ.

MYSE, J. Carolyn Woodmansee[1] appeals an order discharging child support arrearages owed by her ex-husband, Lewis Woodmansee. She argues that sec. 767.32(1m), Stats., removed the trial court's power to reduce or cancel child support arrearages. In response, Lewis argues that sec. 767.32(1m) does not have this effect, or, in the alternative, if it does, it cannot constitutionally be applied to arrearages that accrued before the statute's effective date. We conclude that sec. 767.32(1m) eliminates the court's power to reduce or cancel arrearages and that its application to arrearages accrued before the statute's effective date is constitutional. Therefore, we reverse and remand to the trial court with directions to reinstate the arrearages.

The parties were divorced on January 29, 1980. Carolyn received custody of the couple's three children, and Lewis was ordered to pay $250 per month in child support until all three children reached their majority. At that time, his annual income was approximately $14,294.

On November 9, 1988, the trial court, based on a Rusk County Department of Child Support employee's

---

[1]Carolyn assigned the state of Wisconsin her interest in the accumulated arrearages because she had received AFDC benefits during the period in which the arrearages were accumulated.

affidavit, issued an order for Lewis to show cause why he should not be held in contempt because of his failure to pay child support as required by the divorce judgment.[2] He filed a countermotion requesting cancellation of the accrued arrearage on the ground that he did not earn sufficient income during the period in question to pay the ordered amount. He also requested a reduction in his current support obligation.

After a hearing, the trial court found that Lewis owed $12,873 for unpaid child support. The trial court then reduced this arrearage by $7,680 for the period between January 1980 and November 1988, leaving an arrearage of $5,193.[3] The court concluded that the statutory language in sec. 767.32(1m) did not address the cancellation or reduction of arrearages. Finally, the court also prospectively modified the judgment by reducing Lewis's monthly child support payments to $170, effective December 1, 1988. This latter modification is not challenged on appeal.

The issue is whether sec. 767.32(1m) deprives the trial court of power to reduce or cancel child support arrearages. Resolving this issue requires us to interpret subsec. (1m). This presents a question of law that we review independently of the trial court's determination. *Brown v. Thomas,* 127 Wis. 2d 318, 328, 379 N.W.2d 868, 870 (Ct. App. 1985).

---

[2]The contempt action was later dismissed.

[3]The court arrived at $7,680 by adding Lewis's annual income for the eight-year period and dividing it by eight years, resulting in an average yearly income of $7,037. Applying the administrative code percentages for child support to that figure, it concluded that Lewis should have only had to pay $170 per month rather than the $250 per month required by the divorce judgment. It multiplied the difference, $80 per month, by ninety-six months, and reduced the arrearages by $7,680.

Section 767.32(1) allows a trial court to revise a judgment providing for child support or maintenance. Trial courts have traditionally had the power to retroactively modify or eliminate child support arrearages. *O'Brien v. Freiley,* 130 Wis. 2d 174, 179, 387 N.W.2d 85, 87–88 (Ct. App. 1986). The retroactive modification of support arrearages was "a discretionary remedy which should have as its aim a result that is just in light of all the circumstances." *Id.* at 179, 387 N.W.2d at 88. Section 767.32(1m), effective August 1, 1987, limits this power by providing:

> In an action under sub. (1) to revise a judgment providing for child support . . . the court may not revise the amount of child support . . . due prior to the date that notice of the action is given to the respondent, except to correct previous errors in calculations.

Carolyn argues that the language regarding the retroactive revision of a judgment providing for child support necessarily applies to the forgiveness of arrearages. Lewis, urging a narrower reading of that language, argues that because subsec. (1m) does not mention arrearages, it only applies to prohibit the retroactive revision of a judgment and not to the forgiveness of arrearages.

If a statute's plain language is clear and unambiguous, we must apply it as written and may not resort to extrinsic evidence to determine the legislative intent. *Hemerley v. American Fam. Mut. Ins. Co.,* 127 Wis. 2d 304, 307, 379 N.W.2d 860, 862 (Ct. App. 1985). Subsection (1m) provides that the court may not revise *the amount of child support due* prior to the date notice is given. The language "amount of child support due" refers to arrearages because arrearages constitute child

245

support due. Subsection (1m) therefore prohibits the trial court from reducing arrearages.

Subsection (1m) prohibits the reduction of arrearages not only because that is what the statute's plain language provides, but also because to hold otherwise would permit trial courts to circumvent the statutory prohibition. Were we to accept Lewis' argument that subsec. (1m) should be read to prohibit the retroactive modification of judgments but allow the modification of arrearages, the statute would be rendered meaningless. The modification of arrearages has the same effect as the retroactive modification of the amount of child support in the original judgment, and the law could be circumvented by allowing the former while prohibiting the latter.

Alternatively, even if we were to find that subsec. (1m) could also reasonably be interpreted to apply only to the retroactive revision of a judgment, thus rendering subsec. (1m) ambiguous, our conclusion would not change. If a statute is ambiguous, we must ascertain the legislative intent as disclosed by the statute's scope, history, context, subject matter, and object. *Ball v. District No. 4 Area Bd.*, 117 Wis. 2d 529, 538, 345 N.W.2d 389, 394 (1984).

In enacting this subsection, the legislature intended to prohibit the trial court from reducing or cancelling arrearages. Created by the 1987 Budget Bill as part of the governor's welfare reform commission package, subsec. (1m) responded to federal legislation requiring states to take action regarding overdue child support payments or risk losing federal funds. 42 U.S.C.A. 654(20) (West Supp. 1989) requires a state plan for child and spousal support to

provide, to the extent required by section 666 of this title, that the state (A) shall have in effect all of the

laws to improve child support enforcement effectiveness which are referred to in that section, and (B) shall implement the procedures which are prescribed in or pursuant to such laws.

42 U.S.C.A. sec. 666(a)(9) (West Supp. 1989) provides

(a) Types of procedures required. In order to satisfy section 654(20)(A) of this title, each State must have in effect laws requiring the use of the following procedures, consistent with this section and with regulations of the Secretary, to increase the effectiveness of the program which the State administers under this part:

. . ..

(9) Procedures which require that *any payment* or installment *of support under any child support order,* whether ordered through the State judicial system or through the expedited processes required by paragraph (2), *is (on and after the date it is due)—*

(A) a judgment by operation of law, with the full force, effect, and attributes of a judgment of the State, including the ability to be enforced,

(B) entitled as a judgment to full faith and credit in such State and in any other State, *and*

(C) not subject to retroactive modification by such State or by any other State;

except that such procedures may permit modification with respect to any period during which there is pending a petition for modification, but only from the date that notice of such petition has been given, either directly or through the appropriate agent, to the obligee or (where the obligee is the petitioner) to the obligor. (Emphasis supplied.)

Failure to comply with these requirements by May 31, 1987, may result in the loss of federal funds. 42

U.S.C.A. sec. 666(a)(9) (sec. 9103) requires that, as a condition of state IV–D plan approval, states have in effect laws requiring the use of procedures to prohibit retroactive modification of child support arrearages. 54 Fed. Reg. 15757–03 (1989) (to be codified at 45 C.F.R. pts. 302, 303 and 305).

■

Thus, Congress requires states to prohibit the retroactive modification of child support arrearages or risk losing federal funds. Subsection (1m) is Wisconsin's response to this requirement. As such, we conclude that it should be read to prohibit the reduction or cancellation of child support arrearages.

While Lewis relies on *Burger v. Burger,* 144 Wis. 2d 514, 424 N.W.2d 691 (1988), this case is not controlling. In *Burger,* the court applied the rule set forth in *O'Brien* without mentioning subsec. (1m). However, because the trial court's order in *Burger* apparently predated subsec. (1m)'s effective date, it provides no guidance on the issue now before us.

We note that this statute puts the parties on equal footing with respect to changes in child support. In the past, the custodial parent has not been able to obtain a retroactive increase in child support. *Whitwam v. Whitwam,* 87 Wis. 2d 22, 30, 273 N.W.2d 366, 370 (Ct. App. 1978). Now, neither party may obtain an increase or a decrease in child support before they give the other party proper notice.

Finally, Lewis challenges the constitutionality of applying subsec. (1m) to arrearages that accrued before its effective date. He seems to assert that he has a vested right in the pre-August 1, 1987, procedure allowing the trial court to reduce or cancel support arrearages. We find this argument to be without merit. To prevail on this issue, Lewis must have had a vested right of which

subsec. (1m) now attempts to deprive him. *City of Madison v. Town of Madison,* 127 Wis. 2d 96, 102, 377 N.W.2d 221, 224 (Ct. App. 1985). Under the holding in this case, Lewis will merely be required to pay the amount of child support he was ordered to pay in the original judgment. The discretion the trial court had prior to the passage of subsec. (1m) did not create a vested right in having arrearages reduced or cancelled. *See Miller v. Miller,* 67 Wis. 2d 435, 448, 227 N.W.2d 626, 633 (1975). Depending on the facts presented, the consequences of removing that discretion may be significant. However, these are concerns that must be addressed to the legislature, not the courts.

*By the Court.*—Order reversed and cause remanded.